[No. 14804. Department One. August 8, 1918.]

EDENDALE LAND COMPANY et al., Appellants, v.
JAMES G. CORTELYOU et al., Respondents.[1]

CANCELLATION OF INSTRUMENTS — JUDGMENT — RELIEF GRANTED.
In granting cancellation of deeds and rescission of a trade of proper-
ties, including much personal property, after the lapse of two years,
during which changes occurred in the property and its market value,
it is not error to refuse to decree a return of the personal property
to the plaintiff, where there was no evidence upon which a fair valu-
ation can be placed thereon; especially where there was such con-
fusion in the pleadings that there was no admission as to the pres-
ent value of any of the personal property involved, and no evidence
as to what personalty remained on the place and was covered by
the decree.

Appeal from a judgment of the superior court for
Stevens county, Blake, J., entered August 29, 1917, de-
creeing rescission of contracts for the exchange of real
and personal property, granting defendants a money
judgment against plaintiffs, and refusing to award
plaintiffs the return, or the value, of certain chattels
disposed of by defendants. Affirmed.

*D. R. Glasgow* and *Charles Grant,* for appellants.
*L. C. Jesseph,* for respondents.

MITCHELL, J.—Appellant, Edendale Land Company,
is a corporation the capital stock of which is owned by
appellants T. Waldo Murphy and wife. On August
17, 1915, appellants were the owners of a farm called
Edendale, consisting of 560 acres, together with im-
provements and personal property situate thereon, in
Stevens county, Washington. At the same time, re-
spondents, James G. Cortelyou and wife, were the
owners of several tracts, parcels and lots of real prop-

[1]Reported in 174 Pac. 445.

erty situate in southern California. On that day the parties exchanged properties, the instruments of conveyance expressing nominal considerations. In their negotiations each placed what, for a better name, may be termed a trade value upon his total property, largely in excess of its actual value, according to which plan it appears that appellants' personal property was listed at $20,000, although the bill of sale by which it was conveyed to respondents mentions the consideration of $10. There were a great many articles of personal property disposed of by appellants in the deal, consisting of hay, grain, pipe factory machinery and tools, a small sawmill, engines, boilers, pumps, gasoline spray pump, plumbers' tools, wagons, buggies, harness, sleds, farm machinery and small tools, furniture, several hundred hogs, lumber, merchandise, etc. Each party took possession of the property thus acquired. Subsequently, and prior to November 15, 1915, there were between the parties money transactions of minor importance and some payments made to protect or care for property, or collections made from third parties on account of outstanding obligations transferred by the deal between the parties to this suit. Appellants, becoming dissatisfied and claiming to have been defrauded, served notice of rescission on respondents and offered restitution on November 15, 1915, which was not agreeable to respondents. Appellants promptly commenced suit for rescission and incidentally for certain damages consisting of expenses to California, cost of abstracts, etc. The case was tried some eighteen months thereafter, the judgment being entered August 29, 1917. It appears that, at the time of the commencement of the action, respondents had already disposed of some of the personal property, and, later on and before trial, because of distraint and sale for taxes or voluntary sales, other personal property was disposed

of. The judgment of the trial court canceled the contracts and restored to appellants their lands. As to the dealings and obligations based on transactions occurring between the date of the exchange of properties and the date of trial, the court found and adjudged in favor of respondents Cortelyou and wife in the sum of $1,770, and refused appellants anything on account of expenses in going to California and the cost of abstracts. As to the personal property which was sold by respondents, the judgment provided as follows:

"It is further ordered, adjudged and decreed, that that certain bill of sale dated the 17th day of August, 1915, and recorded in the office of the county auditor of Stevens county, Washington, on the 21st day of August, 1915, in book E of bills of sale at page 254 of the records of bills of sale be and the same is hereby declared to be fraudulent and void, and it is hereby rescinded, canceled of record and held for naught and plaintiffs are hereby adjudged to be the owners of all of said chattels remaining at Edendale free from any claim of the defendants or any one claiming by, through or under them."

From such judgment, Cortelyou and wife or any of the other defendants do not appeal. Appellants, plaintiffs below, appeal from that portion of the judgment providing for a recovery in the sum of $1,770 against them and in favor of Cortelyou and wife; also from that portion of the judgment awarding to appellants only those chattels remaining at Edendale rather than all of the chattels formerly at Edendale included in the original conveyance, or the value of the same; and also from the refusal of the court to allow damages against Cortelyou and wife for appellants' expenses in going to California, costs of abstract, etc.

The record in this case is voluminous. The pleadings consist of over 125 typewritten pages, thus indicating somewhat the great number of things inquired into

and disposed of. In such circumstances, it is not an easy thing for a judge, after determining there shall be a cancellation of instruments, to say, with that precision which shall satisfy all minds, what shall be done by way of adjustment and restoration, especially in such case as the present one, where, during the two years which elapsed after the date of the contracts until the entry of judgment in the case, it appears that sometimes with, and other times without, fault, changes occurred in the property itself, as well as the market value thereof, difficult of measuring in dollars. An examination of the record, the labor of which has been greatly reduced by an unsupplemented abstract of the evidence, indicates the care bestowed on the case by the trial judge, whose judgment in every respect complained of is referable to, and finds· support in, the proof by a preponderance thereof.

Appellants, however, contend that as the court awarded rescission, thus necessarily finding respondents Cortelyou and wife at fault, appellants should have been given judgment for return of the personal property or its value of $20,000. Not necessarily so, when all the conditions and circumstances as they existed at the time of the trial are considered. But suppose it be admitted, for argument's sake, that equity required such adjustment as was made as to all rights other than the personal property and that appellants should have been given the personal property or its value, it is still obvious that appellants have as favorable a judgment in this respect as the pleadings and proof justify. The trial judge, in deciding the case, very correctly remarked on this point:

"Nothing is allowed plaintiff on account of personal property lost or sold since the trade to defendant. This for several reasons, but one will suffice, that is, there is no evidence upon which a fair valuation can be

placed upon such personal property. Of course plaintiffs' contention that they are entitled to $20,000 on this account is absurd. This was a *trade* value and unquestionably was grossly exaggerated.''

With such opinion in view, and to meet it, counsel for appellants call attention to what is claimed to be an admission in the pleadings. In the amended complaint it is alleged in substance that, in pursuance of the terms of the exchange of properties, plaintiffs made, executed and delivered to defendants a bill of sale conveying goods and chattels being then and there of the agreed value of $20,000 and were a part of the original consideration of $158,742 comprising the agreed value of plaintiffs' property transferred to defendants, etc. Answering this, respondents especially deny that said chattels were of the agreed value of $20,000, or any other sum in excess of $10,000. As to these averments, respondents argue with some show of reason that they refer only to what the parties had in mind as *trade* values at the time of the exchange, which values, without question, as to both parties were greatly excessive. But let that be as it may, appellants overlook the fact that in their second supplemental complaint it is alleged, with reference to at least a portion of these chattels, as follows:

· ''That at the time of said exchange in August, 1915, there was delivered to the defendants herein, among other things, tools and equipment aggregating $3,948; live stock of the value of $2,130; stock of merchandise, grain, hay and potatoes, aggregating $1,342, all of which defendants have sold and converted the proceeds thereof to their own use,''

which allegations respondents by their answer deny.

Thus there appears such confusion on this matter by the pleadings that it cannot be said there is any admission as to the present value of any or all of the

personal property involved. However, while it is true that Murphy, in answer to the question, whether the chattels or any part of them which were sold by him to Cortelyou had ever been tendered or offered back to him, replied in the negative; and while it is also true that Murphy did testify that the value of all of the personal property was $20,000, it is true, nevertheless, that a part of the personal property was not disposed of after respondents took possession thereof, for the decree in this case, after setting aside and canceling the bill of sale, adjudges appellants "to be the owners of all of said chattels *remaining at Edendale* free from any claim of defendants." There is no proof as to the value of the goods *remaining* at Edendale, nor of those that had been disposed of, and hence no basis upon which to figure a money judgment, even if it be admitted that the value of all was $20,000 or $10,000, and that appellants would otherwise be entitled to recover therefor.

We are not unmindful of the assault made by respondents upon the abstract and also upon the certificate to the statement of facts in this case, but our disposition of the cause on the merits obviates any necessity for deciding such motions.

Judgment affirmed.

MAIN, C. J., PARKER, FULLERTON, and TOLMAN, JJ., concur.